United States District Court for the Eastern District of Michigan

Highlife Enterprises LLC,
A Michigan Limited Liability Company
and Ronnie Davis,
an individual residing in Oakland County
Jointly and severally

v.

Case No. _____

Judge _____

Huntington National Bank, N.A.,
a Nationally Chartered Bank,
Doing Business in Oakland County,
State of Michigan

_____/

Counsel for Plaintiff
Edward J. Gudeman (P-14454)
Gudeman & Associates, P.C.
401 N. Main Street
Royal Oak, MI 48067
248-546-2800
ejgudeman@gudemanlaw.com

_____/

There is no other action pending between the parties concerning the matters raised in this Complaint, and no prior action has been resolved that would preclude the relief sought herein

Complaint

Highlife Enterprises, LLC, a Michigan Limited Liability Company, and Ronnie

Davis, Jointly and severally, complain against Huntington National Bank,

N.A., a nationally chartered bank, doing business in Oakland County in the State of Michigan as follows:

## PARTIES

1. Plaintiff Highlife Enterprises, LLC., ("Plaintiff Highlife") is a Michigan Limited Liability Company, formed on the 6th day of June, 2024.

2. Plaintiff Ronnie Davis ("Plaintiff Davis") is a resident of /Genesee County Michigan

3. Ronnie Davis caused Plaintiff Highlife to be formed and is the sole member and 100% owner of Plaintiff Highlife.

4. Defendant Huntington Bank N.A. ("Bank") is a national banking association formed under the laws of State of Ohio, with its principal place of business in the State of Ohio but is licensed to conduct business in the State of Michigan and maintains multiple locations throughout the State of Michigan including Oakland County.

## JURISDICTION AND VENUE

5. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiffs assert claims under the Equal Credit Opportunity Act

("ECOA"), 15 U.S.C. § 1691, and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681.

6. This Court has supplemental jurisdiction over all state-law claims pursuant to 28 U.S.C. § 1367 because those claims arise from the same case or controversy as the federal claims.

7. This Court has personal jurisdiction over Huntington National Bank because it conducts substantial business in this district, including maintaining and servicing the bank accounts in Michigan where the events giving rise to this action occurred.

8. Venue is proper under 28 U.S.C. § 1391 because Defendant conducts business in this District and all events giving rise to Plaintiffs' claims occurred here.

9. This Court has subject matter jurisdiction over this action pursuant to 28 USCS § 1332, because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

10. This Court has subject matter jurisdiction over this action pursuant to 12 USC §94, as this is a civil claim for which the District Courts of the United States have jurisdiction.

11. This Court has personal jurisdiction over Huntington Bank N.A., because the Defendant is licensed to do business in the state of Michigan and maintains several places of doing business within the Eastern District of Michigan

## STATEMENT OF FACTS

12. Plaintiffs applied for and were approved for an SBA 7(a) loan in the amount of $150,000 from Defendant Bank.

13. Plaintiff Highlife is the primary obligor pursuant to the Loan Agreements, See Exhibit A.

14. Plaintiff Davis is the personal guarantor of the loan. See Exhibit A.

15. Plaintiffs provided all documentation requested by Defendant, including a business plan, financial projections, Plaintiff Davis's résumé, receipts, and vendor documentation.

16. Plaintiff applied for a Small Business Loan, Series 7(a) in the amount of $150,000.00.

17. Defendant approved the loan and opened related business deposit accounts for Plaintiff Highlife.

18. As part of the documentation that Defendant required Plaintiff Highlife to execute, Defendant included a provision that Plaintiff's had to apply for disbursement of funds for its business purposes.

19. Plaintiff's intention was that the proceeds of the applied for loan be used to implement and execute the business plan submitted to Defendant Bank as part of the loan application.

20. Plaintiffs complied with all contractual and documentation requirements, including using loan proceeds consistent with the approved business plan.

21. In his relationship with Defendant, Plaintiff Davis utilized an alias address legally issued by the State of Michigan, and the Michigan Assistant Attorney General verified and confirmed its validity.

22. Despite this confirmation, Defendant refused to recognize the legal address and improperly and negligently flagged the account as suspicious, without attempting to clarify the validity of the alias address or the reasons why Plaintiff Davis had acquired it.

23. Plaintiffs then located a rental real estate facility that Defendant refused to approve because Defendant believed that the landlord's manager's

request for a cash deposit was suspicious and therefore refused to allow Plaintiff to draw against the approved funds.

24. As a consequence of Defendant's refusal to allow Plaintiff to consummate its relationship with Plaintiff's prospective landlord, Plaintiff lost the ability to locate its business in the desired facility and was unable to begin the business described in the Business Plan, See Exhibit B.

25. Defendant also refused to allow Defendant to rent a facility which Plaintiff had identified as ideal for his business and which was economically attractive and within the precepts of Plaintiffs business plan.

26. Defendant then closed the accounts, refused to accept loan payments, and dishonored checks issued by Plaintiffs against the accounts established for Plaintiff Highlife for Plaintiff Highlife's business use.

27. Defendant blocked access to Plaintiffs' funds, preventing them from conducting business operations.

28. Defendant then retaliated against Plaintiff by freezing Plaintiffs' accounts without any factual or contractual basis for doing so.

29. Defendant reported Plaintiff Davis to an interbank "Past Check List," branding him as a high risk or fraudulent banking customer.

30. As a result of this negative designation, Plaintiffs were unable to open accounts at other financial institutions.

31. Plaintiffs repeatedly attempted to satisfy Defendant's demands by submitting additional documentation to cure any perceived issues, including receipts, address verification, verification of legal alias from the State of Michigan and business activity explanations.

32. Defendant ignored or refused to consider Plaintiffs' submissions.

33. Defendant's conduct severely has damaged Plaintiffs' business reputation and financial stability and has frustrated Plaintiffs' business purposes.

34. Plaintiffs have suffered financial loss, reputational harm, lost opportunities, business interruption, and other damages.

35.    As part of its application, Plaintiff Highlife submitted to Defendant Bank:

    a. Davis's Resume, attached to this Complaint as Exhibit B and

b. a business plan attached to this Complaint as Exhibit B ("Business Plan").

c. Other documents as requested by Defendant Bank

36. Defendant Bank is known to be a significant issuer of government guaranteed SBA loans.

37. Defendant Bank markets itself as an expert with respect to such loans and actively seeks bank clients through its website: https://www.huntington.com/SmallBusiness/loans/sba-guarantee-business-loans\

38. In reliance on Bank's assertations, Plaintiff Highlife decided to make application for an SBA Series 7(a) loan.

39. Defendant Bank reviewed and due consideration approved Plaintiffs' Business Plan, and its included projections, and plan of operations.

40. Plaintiffs were informed that Plaintiff Highlife qualified for a Small Business Administration (SBA) Series 7(a) loan from Defendant Huntington Bank N.A. in the amount of $150,000.

41. The loan terms allowed Plaintiff Davis a $7,500 monthly draw and required receipts for expenditures.

42. Defendant Bank knew that upon closing of the loan transaction that Plaintiff Davis would be taking the Defendant Bank's approved draw and that those funds would be used for his personal purposes and not necessarily in furtherance of the business plan.

43. The loan closed on July 30, 2025, and all related documents are similarly dated.

44. Plaintiff made timely requests for salary draws in accordance with the loan agreement and provided all required documentation to support these requests.

45. Despite Plaintiff's compliance, Defendant failed to process the salary draws in a timely manner, which caused financial hardship and disrupted business operations.

46. At closing, Plaintiff drew $15,000 from the loan proceeds.

47. Defendant Bank improperly treated this $15,000 draw as covering August and September instead of July and August as agreed.

48. Defendant refused Plaintiff's request for a further salary draw for September.

49. Contemporaneously with Plaintiffs' requests for Defendant Bank to fund the requested monthly draw for September, Defendant refused to approve the business location that Plaintiff had selected merely because:

   a. Defendant Bank did not like the physical appearance of the location selected by Plaintiffs and because disapproved that it required a cash deposit, and

   b. Defendant Bank did not believe that the location was being legally offered for rent to Plaintiff Highlife because the manager of the property demanded a cash deposit for security purposes and for the first month's rent.

50. Plaintiff Highlife sought to purchase requisite supplies that Plaintiff Highlife had identified as being available at reasonable prices from sellers on Amazon.com, Plaintiff sought funding for such purposes from Defendant Bank.

51. When Plaintiff Highlife proposed to purchase the supplies which were requisite to the execution of the pre-approved Business Plan, Defendant Bank arbitrarily disallowed Plaintiff's supply purchases from Amazon.

52. Defendant Bank again imposed its arbitrary and negligent will to control and interfere with the implementation of Plaintiff Highlife's pre-approved Business Plan and a representative of Defendant Bank told Plaintiff Davis, as Plaintiff Highlife's representative that Defendant Bank would not approve the requested purchases unless they were made from another source or sources.

53. By Defendant Bank's actions, Defendant Bank became involved with and participant to the business decisions for Plaintiff Highlife and thereby became a fiduciary to Plaintiff Highlife.

54. Prior to their involvement with Defendant Bank, Plaintiff had legally obtained an alias address for business purposes. See Exhibit C.

55. Plaintiff informed Defendant of the alias address and the reasons for such alias address.

56. When Defendant Bank refused to recognize the alias address, Plaintiff Davis caused the Michigan Assistant Attorney General to notify Defendant that Plaintiff's alias address was legally obtained.

57. Despite this notification, Defendant refused to recognize Plaintiff's legally obtained alias address.

58. Negligently and improperly concluding that Plaintiffs were attempting to defraud Bank, Bank closed Plaintiff's account without justification.

59. Defendant prevented Plaintiff from accessing the funds in the account

60. Despite Defendant Bank's actions, Plaintiffs attempted to timely pay the amounts due to Defendant Bank in accordance with the Loan Documents.

61. When Plaintiff attempted to make timely loan payments, Defendant refused to fund the checks which were drawn on Plaintiff Highlife's account and refused to accept them.

62. Defendant Bank's refusal to funds and accept the checks drawn by Plaintiff caused the checks to be "dishonored".

63. Defendant then caused Plaintiff Highlife's name into an interbank Past Check List.

64. As a result of being placed on this interbank list, Plaintiff has been barred from opening new accounts at other financial institutions, including:

    a. A Credit Union, and

    b. Other Bank

65. Plaintiff's inability to open a new bank account at another financial institution has totally prevented Plaintiffs from executing the Business Plan and from conducting any other business.

66. Plaintiffs have repeatedly requested Bank to reconsider its improper and negligent decisions and in that regard has:

    a. Identified a different location from which Plaintiffs could conduct business,

    b. Provided substantiation of his alias address from the State of Michigan

    c. Provided information which supports Plaintiffs' acquisition of ordinary and necessary business supplies from sellers on the Amazon website.

67. Despite their efforts Plaintiffs have been totally frustrated with achieving any of its business goals or purposes as described in the Business Plan.

## CLAIMS FOR RELIEF

### Count I - Breach of Contract

68. Plaintiff repeats, incorporates by reference and realleges, the allegations set forth in all the preceding paragraphs as fully set forth above.

69. Plaintiff and Defendant entered into a valid and enforceable contract, including the SBA Loan Agreement and ancillary documentation, and deposit account agreements with Defendant.

70. Plaintiff and Defendant entered into an SBA Series 7(a) loan agreement for $150,000 with terms allowing a $7,500 monthly salary and requiring receipts for expenditures.

71. Plaintiff performed all obligations required under the contract.

72. Plaintiff complied with all terms of the loan agreement, including providing required documentation for expenditures.

73. Defendant breached the contract by incorrectly treating the initial $15,000 draw as covering August and September instead of July and

August, refusing a further salary draw for September, refusing to approve a business location due to a required cash deposit, disallowing supply purchases from Amazon, refusing to recognize a legally obtained alias address, closing Plaintiff's account, preventing access to funds, and refusing to accept timely loan payments.

74. In addition to the allegations above, Defendant breached the agreements by:

  a. Freezing accounts without justification;

  b. Closing accounts without proper notice;

  c. Refusing loan disbursements to Plaintiff and payments to Plaintiff's creditors;

  d. Dishonoring valid checks;

  e. Blocking access to funds;

  f. Misreporting Plaintiffs as high-risk customers.

75. Plaintiffs have suffered damages as a result of Defendant's breach.

76. As a direct and proximate result of Defendant's breach, in the amount of not less than $150,000 Plaintiff has suffered damages including the

inability to secure a business location, inability to purchase necessary supplies, and inability to conduct his approved legitimate business.

## Count II - Violation of Michigan Consumer Protection Act

## (Against defendant Huntington Bank N.A.)

77. Plaintiff repeats, incorporates by reference and realleges, the allegations set forth in all the preceding paragraphs as fully set forth above.

78. Defendants engaged in methods, acts, or practices declared unlawful by the Michigan Consumer Protection Act.

79. Defendant engaged in unfair and deceptive practices in violation of by misrepresenting the terms of the loan by treating the initial $15,000 draw differently than agreed, refusing to recognize a legally obtained alias address despite notification from the Michigan Assistant Attorney General, arbitrarily disallowing legitimate business expenses, closing Plaintiff's account without proper justification, preventing access to approved funds, refusing to accept timely loan payments, and blacklisting Plaintiff.

80. Defendant's unlawful methods, acts, or practices occurred in the conduct of trade or commerce.

81. Defendant's actions occurred in the course of providing banking and lending services to Plaintiff, which constitutes trade or commerce under the Michigan Consumer Protection Act.

82. Plaintiff suffered an ascertainable loss of money or property as a result of Defendant's methods, acts, or practices.

83. As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiff has suffered ascertainable losses including denied access to the contractually agreed upon loan proceeds of $150,000.00 the inability to secure a business location, inability to purchase necessary supplies, and inability to open necessary banking relationships and account and to conduct business.

Count III - Defamation/Trade Libel

(against defendant Huntington Bank N.A.)

84. Plaintiff repeats, incorporates by reference and realleges, the allegations set forth in all the preceding paragraphs as fully set forth above.

85. Defendant made false and defamatory statements concerning Plaintiff.

86. Defendant entered Plaintiff's name into an interbank list, which falsely suggested that Plaintiff was not creditworthy or was otherwise an

undesirable banking customer, despite Plaintiff having made timely loan payments and complying with the agreed upon loan terms.

87. Defendant published these false statements to third parties.

88. Defendant published these false statements to other banks and financial institutions through the interbank list.

89. Defendant's actions have caused Plaintiffs to be unable to open up replacement banking relationships that Plaintiff's sought to mitigate the damages caused by Defendant.

90. Defendant actions are grossly negligent and defamatory.

91. Defendant knew or should have known that placing Plaintiff on the interbank list would harm Plaintiff's reputation and ability to conduct business.

92. Plaintiff suffered special harm caused by Defendant's publication.

93. As a direct and proximate result of Defendant's false statements, Plaintiff has been barred from opening new accounts at other financial institutions and has been unable to conduct business.

## Count IV

## Tortious Interference with Business Relationships/Expectancies

94. Plaintiff repeats, incorporates by reference and realleges, the allegations set forth in all the preceding paragraphs as fully set forth above.

95. Plaintiff had valid business relationships and expectations with customers, suppliers, and other business partners that required banking services and the ability to secure a business location.

96. Defendant knew of these relationships or expectancies.

97. Defendant knew of these business needs as they were the purpose of the SBA loan that Defendant provided to Plaintiff.

98. Instead of working with Plaintiffs to resolve any issues that Defendant erroneously believed were reasonable cause to truncate its relationship with Plaintiffs, Defendant intentionally interfered with these relationships or expectancies, causing a breach or termination of the relationships or expectancies.

99. Defendant intentionally interfered by refusing to recognize a legally established alias address, approve a business location, disallowing necessary supply purchases, closing Plaintiff's account, preventing

access to funds, and "blacklisting" Plaintiff, preventing him from opening accounts elsewhere.

100. Defendant's interference lacked justification as Plaintiff was complying with loan terms or attempting to do so and attempting to make timely payments.

101. Plaintiff suffered damages as a result of Defendant's interference.

102. As a direct and proximate result of Defendant's interference, Plaintiff has been unable to conduct business, resulting in lost profits and business opportunities and suffered damages in the amount of $10,000,000.00..

## Count V - Breach of Contract

103. Plaintiff repeats, incorporates by reference and realleges, the allegations set forth in all the preceding paragraphs as fully set forth above.

104. Plaintiff and defendant entered into a valid and enforceable loan agreement.

105.   Pursuant to this agreement, Defendant was obligated to deposit SBA loan funds into plaintiff's account and to honor properly drawn checks against that account.

106.   Plaintiff performed all of its obligations under the loan agreement.

107.   Defendant breached the loan agreement by failing to deposit the SBA loan funds into plaintiff's account as agreed.

108.   Defendant further breached the loan agreement by dishonoring plaintiff's $15,000 check.

109.   As a direct and proximate result of defendant's breaches, plaintiff has suffered damages in an amount to be determined at trial, but not less than $15,000.

## Count VI - Wrongful Dishonor

110.   Plaintiff repeats, incorporates by reference and realleges, the allegations set forth in all the preceding paragraphs as fully set forth above.

111.   Plaintiff maintained an account with defendant.

112. Plaintiff wrote a check in the amount of $15,000 drawn on its account with defendant.

113. The check was properly payable under the terms of the account agreement and the loan agreement between plaintiff and defendant.

114. Defendant wrongfully dishonored the check.

115. Defendant's dishonor of the check was not made in good faith.

116. As a direct and proximate result of defendant's wrongful dishonor, plaintiff has suffered damages in an amount to be determined at trial, but not less than $15,000.

Count VII - Promissory Estoppel

117. Plaintiff repeats, incorporates by reference and realleges, the allegations set forth in all the preceding paragraphs as fully set forth above.

118. Defendant made clear and definite promises to plaintiff regarding the SBA loan and the honoring of checks drawn on plaintiff's account.

119. Defendant reasonably expected that plaintiff would rely on these promises.

120.    Plaintiff reasonably relied on defendant's promises by writing a $15,000 check from its account.

121.    Plaintiff's reliance was reasonable and foreseeable.

122.    Plaintiff has suffered damages as a result of its reliance on defendant's promises.

123.    Injustice can only be avoided by enforcing defendant's promises.

### Count VIII- Breach of Good Faith and Fair Dealing

124.    Plaintiff repeats, incorporates by reference and realleges, the allegations set forth in all the preceding paragraphs as fully set forth above.

125.    A covenant of good faith and fair dealing is implied in every contract, including the loan agreement and account agreement between plaintiff and defendant.

126.    Instead of attempting to resolve the issues that Defendant alleged to be an impediment to proceeding with its agreements, Defendant chose to punish and penalize Plaintiffs by shutting down Plaintiff Highlife's accounts and refusing to honor its commitments.

127.   Defendant breached this covenant by failing to deposit the SBA loan funds as agreed and by dishonoring plaintiff's check.

128.   Defendant's actions were taken in bad faith and with improper motive.

129.   Defendant's actions destroyed plaintiff's right to receive the benefits of the loan agreement and account agreement.

130.   As a direct and proximate result of defendant's breach of the covenant of good faith and fair dealing, plaintiff has suffered damages in an amount to be determined at trial, but not less than $150,000.

## Count IX - Negligent Misrepresentation

131.   Plaintiff repeats, incorporates by reference and realleges, the allegations set forth in all the preceding paragraphs as fully set forth above.

132.   Defendant made representations to Plaintiff regarding the SBA loan, the funding of Plaintiff Highlife's account and the honoring of checks drawn on plaintiff's account.

133.   These representations were false.

134.   Defendant was negligent in making these representations.

135. Defendant intended for Plaintiff to rely on these representations.

136. Plaintiff reasonably relied on defendant's representations by writing a $15,000 check from its account.

137. As a direct and proximate result of plaintiff's reliance on defendant's negligent misrepresentations, plaintiff has suffered damages in an amount to be determined at trial, but not less than $150,000.

## Count X

## Breach of Fiduciary Duty

138. Plaintiff repeats, incorporates by reference, and realleges, the allegations set forth in all the preceding paragraphs as fully set forth above.

139. When Defendant Bank inserted itself into the implementation of the Business Plan it caused Defendant Bank to be impressed with a fiduciary duty on behalf of Plaintiff Highlife.

140. By disallowing the legitimate efforts of Plaintiff Highlife to acquire a place of business, purchase appropriate supplies, allow Plaintiff to take agreed upon draws, dishonoring Plaintiff Highlife's checks, closing

Plaintiff's accounts and entering Plaintiff onto the passed check list, Defendant Bank breached its fiduciary duty.

141. Defendant, by failing to address the issues raised by the misconstruction of the loan documents, disallowing Plaintiff Highlife from acquiring an otherwise adequate place of business, and disallowing Plaintiff Highlife from acquiring appropriate supplies, Defendant Bank negligently interfered with Plaintiff Highlife's business and thereby negligently breached its fiduciary standard of care.

142. As a result of Defendant Bank's breach of its fiduciary standard of care, Plaintiff Highlife was damaged and rendered incapable of executing its Defendant Bank approved Business Plan.

## COUNT XI

## ECOA ADVERSE ACTION (15 U.S.C. § 1691)

143. Plaintiffs incorporate all prior allegations.

144. Section 15 U.S.C. § 1691, which is part of the Equal Credit Opportunity Act (ECOA), makes it illegal for creditors to discriminate against applicants on the basis of race, color, religion, national origin, sex, marital status, age, or reliance on public assistance.

145. Defendant is a "creditor" and Plaintiffs are "applicants" under ECOA.

146. Defendant took adverse action by freezing accounts, blocking access to credit, refusing payments, closing accounts, and reporting Plaintiffs negatively.

147. ECOA requires written adverse action notices.

148. Defendant issued none.

**149.** Plaintiffs suffered credit damage, business interruption, and financial losses.

## PRAYER FOR RELIEF

*WHEREFORE, plaintiff respectfully requests that this Court enter judgment in its favor and against defendant as follows:*

1. Compensatory damages in an amount to be determined at trial, but not less than $15,000;

2. An order of specific performance requiring defendant to deposit the SBA loan funds into plaintiff's account as agreed;

3. Prejudgment interest pursuant to 28 USCS § 1961;

4. Costs pursuant to 28 USCS § 1920;

5. A declaration pursuant to 28 USCS § 2201 of the rights and obligations of the parties under the loan agreement and account agreement;

6. An award of actual damages Plaintiff David, in the amount of $7500.00 per month times 60 months and exemplary and punitive damages in the amount of $10,000,000.00.

7. Such other relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant, and grant the following relief:

A. Compensatory damages against Defendant in an amount determined at trial, but not less than $150,000.

B. An injunction pursuant to ordering Defendant to remove Plaintiff's name from the interbank list or other "blacklists," cease reporting negative information about Plaintiff, and reinstate the loan according to its original terms or release Plaintiff from any obligations under the loan without penalty;

C. Order Defendants to cause all derogatory information or comments about Plaintiffs from all credit reporting agencies, bureaus, credit reporting services.

D. Award damages to Plaintiff in the amounts reasonably sought by Plaintiffs in Plaintiffs' Business Plan

E. Award Exemplary damages against Defendant pursuant to an amount to be determined at trial;

F. Issuing a declaration that Defendant breached the loan agreement and that Plaintiff followed the loan terms;

G. Reasonable attorney fees and costs;

H. Pre-judgment and post-judgment interest as allowed by law; and

I. Such other relief as the Court deems just and proper.

Respectfully submitted,

By Edward J. Gudeman
Edward J. Gudeman (P-14454)
Gudeman & Associates, P.C.
Counsel for Plaintiff
401 N. Main Street
Royal Oak, MI 48067
248-546-2800
ejgudeman@gudemanlaw.com